# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

KEDRICK WHITE,

     Movant,

v.

                              Cv. No. 2:18-cv-02135-SHM-tmp
                              Cr. No. 2:14-cr-20118-SHM-01

UNITED STATES OF AMERICA,

     Respondent.

## ORDER DENYING & DISMISSING MOTION PURSUANT TO 28 U.S.C. § 2255
## ORDER DENYING CERTIFICATE OF APPEALABILITY
## ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
## AND
## ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Before the Court are the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed by Movant, Kedrick White, Bureau of Prisons ("BOP") register number 26911-076, an inmate at the Federal Correctional Institution ("FCI Petersburg") in Hopewell, Virginia (ECF No. 1), and the Response of the United States.  (ECF No. 5.)  For the reasons stated below, Movant's § 2255 Motion is **DENIED**.

## I.     BACKGROUND

### A.      Criminal Case No. 2:14-cr-20118-SHM-01

On April 9, 2015, a federal grand jury in the Western District of Tennessee returned a second superseding six-count indictment against White.  (Criminal ("Cr.") ECF No. 60.)  White was charged with three counts of robbery, in violation of 18 U.S.C. § 1951 (Counts One, Two & Three), and three counts of using, carrying, and brandishing a firearm during and in relation to a

crime of violence, specifically robbery, in violation of 18 U.S.C. § 924(c) (Counts Four, Five &

Six).  (*Id.*)

On June 16, 2015, White pled guilty to one count of robbery (Count Three) and one count

of brandishing a firearm (Count Four) pursuant to a written Fed. R. Crim. P. 11(c)(1)(C) plea

agreement.  (Cr. ECF Nos. 74 & 76.)  The factual basis for the charges was summarized by the

United States during White's change of plea hearing:

> Had this matter proceeded to trial, the evidence would have been that on October 7th of 2013 that Mr. White used a firearm to facilitate the robbery of the Shell gas station located at 1335 South Bellevue here in Memphis, Tennessee.
>
> Specifically the evidence would have been that Mr. White received information that an employee of the Shell station was going to be taking money from the Shell station to be deposited into a local bank.
>
> Mr. White was the passenger of a vehicle who waited outside of the Shell station until that particular employee left with the money and then pursued that employee until that employee stopped at a Texaco station located on Lamar.
>
> When the employee parked his vehicle at that Texaco station, Mr. White approached; brandished the firearm; and asked the employee to give him the money.  The employee did; and Mr. White received $4,699.
>
> The evidence would have been that this robbery was witnessed by someone who called 9-1-1, and the Memphis Police Department apprehended Mr. White within minutes of the robbery.  At that time Mr. White was still in possession of the $4,699 that had been taken from the Shell gas station.
>
> A representative of the Shell station would have testified that it was a business engaged in interstate commerce.
>
> And we would have asked the Court to take judicial notice that Memphis, Tennessee, is located in the Western District of Tennessee.

(Plea Transcript ("Tr."), Cr. ECF No. 101 at 25-26.)

The plea agreement provided:

> 1.      Kedrick White agrees that he will enter a voluntary plea of guilty to Counts Three and Four of the indictment.  Mr. White agrees that he is entering

2

a voluntary plea of guilty to Counts Three and Four because he did, in fact, brandish a firearm while robbing the Shell gas station located at 1335 South Bellevue in Memphis, Tennessee on or about October 7, 2013.

2.      Given the facts in the possession of the United States at the time of the writing of this agreement, the United States does not oppose the defendant receiving the full three points for acceptance of responsibility.  The defendant understands that if the United States receives information between the signing of this agreement and the time of the sentencing that the defendant has previously engaged in conduct inconsistent with the acceptance of responsibility, this position could change.

3.      Kedrick White understands that whether or not he receives acceptance of responsibility credit pursuant to U.S.S.G. § 3E1.1 is a matter to be determined by the Court.  Accordingly, if the Court fails to grant Mr. White acceptance of responsibility credit, this will not serve as a basis for the defendant to withdraw his guilty plea.

4.      Pursuant to Federal Rules of Criminal Procedure 11(c)(1)(C), the United States and Kedrick White agree that 240 months is an appropriate sentence in this matter.  Should the Court reject this sentence, the United States and/or Mr. White may withdraw from this Plea Agreement.

5.      Kedrick White understands that Title 18, U.S.C. § 3742 gives him the right to appeal the sentence imposed by the Court.  Acknowledging this, the defendant knowingly and voluntarily waives his right to appeal or otherwise challenge the sentence imposed by the Court, as long as the sentence imposed does not exceed 240 months.  The waiver in this paragraph also does not apply to claims relating to (1) prosecutorial misconduct or (2) ineffective assistance of counsel.

6.      The United States agrees to dismiss the remaining counts at the conclusion of the sentencing hearing.

7.      Kedrick White agrees that his Plea Agreement constitutes the entire agreement between the parties.  Kedrick White further agrees that his guilty plea is being made free of any threats or coercion.  By signing below, Kedrick White acknowledges that (1) he has read this agreement, (2) he has discussed this agreement with his counsel, and (3) he has a full and complete understanding of the agreement's provisions and consequences.

(Cr. ECF No. 76 at 1-3.)

The appellate opinion of the United States Court of Appeals for the Sixth Circuit summarizes the proceedings after White had pled guilty and analyzes the validity of White's plea and appellate waiver:

> The presentence report classified White as a career offender under the Sentencing Guidelines and recommended a three-level reduction for acceptance of responsibility. *See* § 3E1.1. The resulting Guidelines range of imprisonment from the specific career offender table for § 924(c) offenders was 262 to 327 months, *see* U.S.S.G. § 4B1.1(c)(3), the same range that would be produced by a total offense level of 34 and a criminal history category of VI.

> After upholding White's objections to the presentence report, the court granted the government's U.S.S.G. § 5K1.1 motion for a two-level reduction due to substantial assistance, which effectively reduced White's Guidelines range to 210 t0 262 months in prison. The court then imposed the stipulated sentence of 240 months in prison, allocated between consecutive terms of 156 months on the § 1951 charge and 84 months on the § 924(c) charge, and three years of supervised release. Accordingly, judgment was entered on November 19,2 015.

> White's court-appointed counsel has filed an appellate brief with this court and a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). After a review of the record, counsel expressed the opinion that there were no meritorious grounds for appeal, but nonetheless raised the following issues: (1) whether White's guilty plea was valid and whether the waiver bars a direct appeal of his guilty plea and sentence: (2) whether the appellate waiver bars any challenge to the application of the Sentencing Guidelines, including the career offender enhancement, (3) whether the district court had the authority to impose a sentence other than that stipulated in the Rule 11(c)(1)(C) agreement; (4) whether White's state convictions for robbery were properly counted as predicate offenses under the career offender guideline in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), and related cases; and (5) whether White may bring a claim of ineffective assistance of counsel on direct appeal. White has been notified of his right to file a response, but has not done so. The government has moved to dismiss the appeal.

> As a preliminary matter, we conclude that the government's motion to dismiss the appeal must be denied. The plain language of the appellate waiver provision does not bar any challenge to White's guilty plea or to claim of ineffective assistance of counsel and prosecutorial misconduct.

> We deem counsel's motion to withdraw to be well-taken. Our full examination of all of the proceedings leads us to conclude that an appeal would be wholly without merit. *See Anders*, 386 U.S. at 744.

No arguable issue exists concerning the validity of White's guilty plea or appellate waiver.  Rule 11 of the Federal Rules of Criminal Procedure sets forth the procedure to be followed by a district court in accepting a guilty plea.  The purpose of Rule 11 is to ensure that a defendant understands the nature of his or her applicable constitutional rights, that the guilty plea is voluntary with a full understanding of the nature of the crime charged and the consequences of the plea, and that a factual basis exists for the crime to which the plea is being offered.  *United States v. Catchings*, 708 F.3d 710, 716 (6th Cir. 2013).

A waiver provision in a plea agreement is binding so long as it is made knowingly and voluntarily.  *United States v. Hockenberry*, 730 F.3d 645, 671 (6th Cir. 2013).  Under Rule 11(b)(1)(N), the district court "must inform the defendant of . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence."  A valid waiver precludes a defendant from raising any type of claim prohibited by the agreement.  *United States v. Sharp*, 442 F.3d 946, 949 (6th Cir. 2006).  However, an appellate waiver does not bar a challenge to whether a defendant's plea was knowing, voluntary, and intelligent.  *See United States v. Webb*, 403 F.3d 373, 378 n.1 (6 t h Cir. 2005).

Our review of the guilty plea transcript reveals that the district court substantially complied with the requirements of Rule 11.  The district court began by advising White that his answers could be used against him in a perjury prosecution and that he was waiving his constitutional trial rights.  White acknowledged that he had reviewed the indictment.  The court read aloud each charge, explained the statutory penalties, and informed White that a violation of supervised release could result in more prison time.  White confirmed that no one had threatened him or tried to force him to plea guilty and that he had signed the plea agreement freely and voluntarily.  The court then summarized the provisions of the plea agreement, including the stipulated sentence and the appellate waiver.  Next, the court described the Guidelines and the 18 U.S.C. § 355(a) factors and again discussed the appellate waiver.  White repeatedly acknowledged that he understood.  At the court's request the Assistant United States Attorney provided the factual bases for the charges, explaining that White had brandished a firearm at an employee of a gas station and demanded that the employee turn over money being taken to a bank.  White admitted that the facts were correct and entered his guilty pleas.

White's guilty plea and appellate waiver were valid because he knowingly and voluntarily entered into them.  A defendant such as White "who expressly represents in open court that his guilty plea is voluntary 'may not ordinarily' repudiate his statements" thereafter.  *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).  The validity of the appellate waiver means that White has waived any

right to otherwise challenge his sentence.  Thus, we need not consider counsel's second, third, and fourth issues.

No arguable issues of ineffective assistance of counsel appear on the record.  Counsel did not suggest any way in which trial counsel may have rendered ineffective assistance.  Moreover, claims of ineffective assistance are disfavored on direct appeal and are more appropriately brought by filing a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence, unless the record is adequate to review the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504-07 (2003).  Here, the record does not reveal any instance of ineffective assistance.

Accordingly, we **DENY** the government's motion to dismiss, we **GRANT** counsel's motion to withdraw, and we **AFFIRM** the district court's judgment.

(Cr. ECF No. 103 at 3-5.)

### B.   Case Number 18-2135-SHM-tmp

On February 27, 2018, White filed this § 2255 motion alleging that counsel provided

ineffective assistance by:

(1)     Failing to file a motion to dismiss the indictment (ECF No. 1 at 4);

(2)     Promising White that he would be sentenced to ten to fifteen years in prison if he pled guilty (*id.* at 5); and

(3)     Failing to investigate the case and challenge the government's proof. (*Id.* at 7.)

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of

constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of

fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id*.

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley*, 523 U.S. at 622.

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rule 4(b), Rules Governing

Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must

demonstrate that "counsel's representation fell below an objective standard of reasonableness."

*Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.  [*Strickland*, 466 U.S.] at 689.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[1]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 104; *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail.

---

[1]"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland*, 466 U.S. at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence."  *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993).  The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.  *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 105.

The Sixth Amendment right to effective counsel extends to the plea-bargaining process and is governed by the two-prong *Strickland* test.  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citing *Missouri v. Frye*, 566 U.S. 133, 140-41 (2012)); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). To establish constitutionally ineffective assistance in the plea-bargaining process, the movant must show not only that counsel was deficient, but that the outcome of the plea process would have been different with competent advice.  *Id.*

The Supreme Court cases addressing counsel's deficient performance during plea discussions generally fall into one of two categories:  (1) counsel failed to communicate a favorable plea offer to the defendant before the time to accept the offer had expired, *see*, *e.g.*, *Frye* (counsel's failure to communicate a formal offer from the prosecution to accept a plea on

terms and conditions that may be favorable to the accused constitutes deficient performance); or

(2) counsel gave materially inaccurate sentencing information or advice to defendant who, based

on that advice, rejected the offer and proceeded to trial, *see*, *e.g.*, *Hill* (counsel's failure to inform

the defendant accurately of the time he would have to spend in prison before he became eligible

for parole constituted deficient performance).

A substantial disparity between a plea offer and the potential sentence is strong evidence

of a reasonable probability that a properly advised defendant would have accepted the plea offer.

*Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) (evidentiary hearing warranted as to

whether defendant would have pled guilty where attorney failed to convey plea offer of five

years and defendant sentenced to 156 months) (citing *Magana v. Hofbauer*, 263 F.3d 542, 552

53 (6th Cir. 2001) ( difference between ten and twenty year sentence significant); *United States*

*v. Gordon*, 156 F.3d 376, 377 81 (2d Cir. 1998) (disparity between 10 year sentence in plea offer

and 17 1/2 years the defendant received was objective evidence that a plea would have been

accepted)).   However, an attorney's failure to insist that his client accept a plea offer due to

overwhelming evidence of guilt does not constitute constitutionally ineffective assistance.

The decision to plead guilty first, last, and always rests with the defendant, not his

lawyer.  Although the attorney may provide an opinion about the strength of the government's

case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the

ultimate decision about whether to go to trial must be made by the person who will bear the

ultimate consequence of a conviction. *Id.*

## III.    ANALYSIS

As an initial matter, White has not met the prejudice prong for his claim of ineffective

assistance because he does not allege that, "but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. at 59.  White does

not request a trial; he requests immediate release.  (ECF No. 1 at 13.)

### A.	Issue One:  Counsel's Failure to File a Motion to Dismiss the Indictment

White alleges that his indictment "failed to meet the standards of Fed. R. Crim. P. 6 and

the Fifth Amendment" because "the indictment brought had not been 'found' by the requisite 12

jurors of a grand jury [and that] [p]roper indictment procedure required submission of a formal

indictment to the grand jury for approval after the prosecutor drafted it, such that review of the

indictment without the signature of the foreman alone required dismissal of the indictment."

(ECF No. 1 at 4, 15-17.)  White contends that he was indicted for robbery of a "business, not the

individual".  (*Id.* at 8.)  The United States responds that White presents no proof demonstrating

that the second superseding indictment was deficient and that his allegations are contradicted by

the record.  (ECF No. 5 at 32-33.)

The record of White's criminal case demonstrates that the second superseding indictment

was signed by the grand jury foreperson and an Assistant United States Attorney.  (Cr. ECF No.

60.)  White was charged with and convicted of violating the Hobbs Act, 18 U.S.C. § 1951(a).

Businesses are properly considered to be targets of Hobbs Act robbery.  *United States v. Chance*,

306 F.3d 356, 374-75 (6th Cir. 2002).

> Traditionally, the government meets the *de minimis* standard in a Hobbs Act case
> under the "depletion of assets" theory.  The government presents evidence that a
> business is either actively engaged in interstate commerce or customarily
> purchases items in interstate commerce, and had its assets depleted by the
> robbery, thereby curtailing the business' potential as a purchaser of such goods.

*United States v. Turner*, 272 F.3d 380, 385 n.2 (6th Cir. 2001) (internal quotation marks and

brackets omitted), *amended on other grounds by United States v. James*, 280 F.3d 1078 (6th Cir.

2002).

Counsel has no duty to file motions lacking a legal basis. White has failed to demonstrate that counsel's performance was deficient. Issue One is **DENIED**.

**B.** **Issue Two: Counsel's Erroneous Legal Advice on White's Sentence Rendered White's Plea Involuntary**

White alleges that he was promised that, if he pled guilty, he would be sentenced to ten to fifteen years in prison. (ECF No. 1 at 5.) Specifically, White contends that "he had been told by his counsel in the Federal criminal proceedings that counsel had conferred with the prosecutor and the judge, and that if he [pled] guilty he would get only 10-to-15 year sentence." (*Id.*) White also alleges that counsel "instructed" him to "deny the existence of any promises in order that the court would accept the guilty plea." (*Id.* at 5-6.) The United States responds that the validity of White's "plea was adjudicated by the appellate court to have been knowing and voluntary, and thus valid." (ECF No. 5 at 34.)

The Sixth Circuit has previously determined that White knowingly and voluntarily pled guilty and that no arguable issue of ineffective assistance appeared on the record. (Cr. ECF No. 103 at 5.) White now alleges that his attorney promised that if White pled guilty he would be sentenced to between ten to fifteen years in prison and that because that promise was not fulfilled, his guilty plea was involuntary. (ECF No. 1 at 5-6.) He alleges that his attorney told White's sister and mother "the same thing". It defies logic that, if such a promise had been made, White would not have provided witness affidavits to appellate counsel and required appellate counsel to raise the issue on direct appeal. White's allegations are unsupported by affidavits and are contradicted by the record.

The Rule 11(c)(1)(C) plea agreement provided that "240 months is an appropriate sentence in this matter" and gave either party the right to withdraw from the agreement if that

13

sentence were not imposed.  (Cr. ECF No. 76 at 2.)  White affirmed under oath that he had read

the agreement, discussed the agreement with his attorney, and signed the agreement.  (Cr. ECF

No. 101 at 14-15.)  The Court explained the agreement to White as follows:

> Mr. White, what that means, I sometimes call it a take-it-or-leave-it agreement; and we'll talk a little bit more about the Court's responsibility in the situation.  It means that there are certain provisions in this agreement on which you and the Government have agreed.  The Court hasn't agreed to those; but because it's fundamental to the agreement, if the Court doesn't sentence you in accordance with those specific provisions, then either you or the United States could withdraw from the plea agreement and go to trial.

(*Id.* at 14.)  White testified that he understood.  (*Id.*)  The Court explained White's two decision-

making points:  (1) If the Court sentences you to more than 240 months, you can withdraw your

plea and go to trial and (2) If the Court sentences you to more than 240 months, you can abide by

that for trial purposes; but you can then appeal if you think your sentence is unreasonable or

contrary to law.  (*Id.* at 23.)  White testified that he understood those choices.  (*Id.*)  White

testified that, other than talking to his lawyer about how the sentencing process works and how

the sentencing guidelines might apply to his case, no one had made a promise or prediction about

what his sentence would be if he pled guilty.  (*Id.* at 24.)  White said, "Your Honor, you did a

perfect job of making sure everything is understandable." (*Id.* at 26.)

The Court recollects and the record demonstrates that White's sentencing hearing was

delayed on two occasions while White was awaiting the United States' decision to make a

motion pursuant to U.S.S.G. § 5K1.1 and/or Rule 35.   (Cr. ECF Nos. 83, 86, 96 at 5-6.)  A

motion pursuant to U.S.S.G. § 5K1.1 was made by the United States during White's sentencing

hearing, and the Court granted a downward departure of two levels. (Cr. ECF No. 102 at 46-54.)

The possibility remained that a Rule 35 motion would be filed after sentencing providing White

with an opportunity for an additional departure and a lesser sentence.  (*Id.*)  The record is devoid

of any offer or agreement for a ten to fifteen-year sentence. "Unfulfilled subjective expectations of counsel and a defendant regarding the possible length of sentence do not render an otherwise valid plea involuntary." *United States v. Ford*, 15 Fed. App'x 303, 308 (6th Cir. 2001); *see also Irvin v. Parke*, 786 F.2d 1165, 1165 (6th Cir.1986) (citing *Stout v. United States*, 508 F.2d 951 (6th Cir.1975)) ("A subjective belief that a lenient sentence will be imposed, on a guilty plea, even if that belief is based on an erroneous estimation by counsel does not invalidate a guilty plea.").

On the record before the Court, the government could have established White's guilt on Counts Three and Four. White was still in possession of the money from the robbery when he was apprehended by the police. By accepting the Rule 11(c)(1)(C) plea agreement, four counts of the indictment were dismissed, substantially reducing White's potential prison term of up to 320 months in prison, including the mandatory 84-month sentence on Court Four. (Presentence Report ¶¶ 71-72.) White was sentenced to the parties' agreed sentence of two-hundred-forty months in prison. White has failed to demonstrate deficient performance by counsel or prejudice from counsel's advice. Issue Two is without merit and is **DENIED**.

C. **Issue Three: Counsel Failed to Investigate the Case and Challenge the Government's Proof**

White contends that "the evidence available to trial/Direct Appeal counsel . . . would have established that [he] never committed any Robbery Affecting Interstate Commerce on or about October 7, 2013, Nor did he commit[ ] any Brandishing, Using, and Carrying a Firearm During and in Relation to a Crime of Violence on or about October 7, 2013, in violation of 18 U.S.C. § 924(c). Counsels never investigated this evidence and didn't even put the government to its burden of proof on these issues." (ECF No. 1 at 7 (irregular capitalization in original).)

The United States responds that White has not shown any reason to believe that any of the facts could have been successfully challenged either before or at trial, or that any successful challenge would have had any impact on the disposition of this case. (ECF No. 5 at 8.)

White's allegations are conclusory. On the record before the Court, the government could have established White's guilt on both charges. The evidence was strong. By entry of his guilty plea, White substantially reduced his potential prison term by obtaining a three-level reduction for acceptance of responsibility and the dismissal of four counts of the indictment. It is unlikely that any competent counsel would have advised Movant against pleading guilty. White received significant benefit from the negotiated plea agreement. A decision to reject the plea agreement would not have been rational under these circumstances.

White has failed to demonstrate ineffective assistance of counsel. No facts are presented that demonstrate any prejudice to White. Issue Three is without merit and is **DENIED**.

## IV. CONCLUSION

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Movant's conviction and sentence are valid. His motion is **DENIED**. Because Movant's motion to vacate is being dismissed, his motion for appointment of counsel is **DENIED** as **MOOT**. Judgment shall be entered for the United States.

## V. APPELLATE ISSUES

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal

without this certificate.  The COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. § 2253(c)(2), (3).  A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).  A COA does not require a showing that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011).  Courts should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337).  In this case, for the reasons previously stated, Movant's claims lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ.  The Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.  *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a).  *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED. If Defendant files a notice of appeal, he must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days (*see* Fed. R. App. P. 24(a) (4)-(5)).

**IT IS SO ORDERED,** this 16th day of October 2020.

/s/ *Samuel H. Mays, Jr.*

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE